IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MONICA S. JAMES, BERNADETTE HOFFMAN, LORRIE MOORE, AND TIARA PRISBREY,<br><br>Plaintiffs,<br><br>v.<br><br>FRANK'S WESTATES SERVICES, INC., AND GENE MCFARLAND,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:07-cv-00937-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Plaintiffs Monica S. James, Bernadette Hoffman, Lorrie Moore, and Tiara Prisbrey allege that Gene McFarland – President of Frank's Westates Services, Inc. ("Frank's") – sexually harassed them on various occasions during their time of employment by Frank's. Plaintiffs now seek redress on the four causes of action stated in their complaint. Defendants move for summary judgment on all claims. The court denies the motion for the first cause of action for hostile work environment, and the third cause of action against Mr. McFarland for intentional infliction of emotional distress. The court grants summary judgment in favor of Defendants on all other causes of action for the reasons discussed below.

## MOTIONS TO STRIKE

Plaintiffs have moved to strike various portions of the affidavits submitted by Defendants. "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[1] However, on this motion the court "did not apply or consider the complained-of affidavit evidence when ruling on the motion for summary judgment."[2] Therefore, because the court finds that the evidence "is not material to the outcome," the motions to strike are denied as moot.[3]

## FACTUAL BACKGROUND

Frank's Weststates Services, Inc. provides casing running services to the oil industry. Plaintiffs Monica S. James, Bernadette Hoffman, Lorrie Moore, and Tiara Prisbrey were all employees of Frank's working in various capacities, and Defendant Gene McFarland was Frank's president during the time of the alleged harassment.[4] Plaintiffs' complaint alleges that during their employment they had each been subjected to sexual harassment by Mr. McFarland. Each Plaintiff has previously filed a Charge of Discrimination with the Utah Anti-Discrimination & Labor Division and E.E.O.C., and has also been provided a Notice of Right to Sue.

Regarding the particular instances of harassment specific to Ms. James, the record indicates that Mr. McFarland had invited her to sit on his lap and talk about the first thing that comes up. He called her a hot-blooded Mexican and told her that she would need a large coat to cover her big "bumps." He had pulled her hair, called her sexy, and talked to her about lesbians. Ms. James has stated that Mr. McFarland's treatment led directly to a loss of sleep, caused her to become edgy, and feel depressed and angry. Ms. James has also testified that as part of the

---

[1] Fed R. Civ. P. 12(f).
[2] *Rich Floors, L.L.C. v. Jaylon, Inc.*, No. 08-cv-02291-LTB-BNB, 2010 U.S. Dist. LEXIS 42652, at *29 (D. Colo. Apr. 5, 2010).
[3] *Cannon v. Minn. Mining and Mfg. Co.*, 2009 U.S. Dist. LEXIS 10308, at *20 n.3 (D. Utah February 11, 2009).

2

harassment, the type of work she was assigned was changed and that her rate of payment was lowered.

Ms. Hoffman has testified that Mr. McFarland harassed her by pretending to take a strand of her hair and laying it across his chest said "all I need is just one to make people wonder." When she was sick, Mr. McFarland told her that that she should "drink a hot toddy and get under four blankets and sweat it out with an old man" like him. Ms. Hoffman has also testified that Mr. McFarland would tell her that he took Viagra, and had on occasion tried to look down her shirt. Although Ms. Hoffman thought she could handle it initially, the record indicates that Mr. McFarland's treatment caused Ms. Hoffman to cry, gain weight, and lose sleep. As a result of Mr. McFarlan's treatment, Ms. Hoffman also became abrupt with people, paranoid, withdrawn, and suffered headaches. Ms. Hoffman has also testified that she tried to find help but found none, and had finally had enough.

Ms. Moore has testified that Mr. McFarland sexually harassed her by telling her that she did her best work on her back and said on another occasion that he'd rather be under her than have her run over him. He told a co-worker that Moore needed "a good horse F-ing." The record indicates that McFarland had told stories that made her feel "uneasy and uncomfortable," and that the stress due to his harassment resulted in Ms. Moore having sleeping trouble, headaches, depression, and taking up smoking again. Moreover, Ms. Moore testified that Mr. McFarland's granddaughter had caused Ms. Moore and her son problems in collecting their checks and dealing with payroll.

Ms. Prisbrey testified that after Mr. McFarland had walked in on her in the bathroom he would not leave. She has also testified that Mr. McFarland had also looked down her blouse,

---

[4] Ms. Moore worked as a welder, and Ms. James, Ms. Prisbrey, and Ms. Hoffman all worked as dispatchers. Ms. James also repaired torque gauges.

3

asked where she got those "bumps" on her shirt, and had talked to her about his sex life. Mr. McFarland's harassment resulted in her being unable to sleep, gaining weight, and feeling both depressed and anxious. Ms. Prisbrey has also testified that she was forced to quit because of the treatment that she received.

Other general evidence of a harassing environment includes Mr. McFarland hitting men in the groin, calling another worker "Chesty," and trying to grab the same worker's breast. Other employees at Frank's watched pornographic films, and one of the employees, Val Francisco, had been seen by Ms. Hoffman lying across McFarland's desk with her dress down and her breasts hanging out. This evidence is offered to show that Frank's work place was one of frequent sexual innuendo and sexually pervasive discussion.

## SUMMARY JUDGMENT STANDARD

Defendants' motion for summary judgment will be granted, only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[5] In moving for summary judgment, "[t]he movant has the burden of showing that there is no genuine issue of fact;" however, "the plaintiff is not thereby relieved of his own burden of producing . . . evidence that would support a jury verdict."[6] Likewise, the role of the Court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial."[7]

I. **FIRST CAUSE OF ACTION –TITLE VII HOSTILE ENVIRONMENT**

The Supreme Court has held that Title VII of the Civil Rights Act of 1964 makes it,

> "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, condition or privileges of employees, because of such individual's race, color, religion, sex, or national origin . . . .' [T]his

---

[5] Fed. R. Civ. P. 56(c)(2).
[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).
[7] *Id*. at 249.

language is not limited to economic or tangible discrimination, but also prohibits employers from requiring people to work in a discriminatory hostile or abusive environment . . . . When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated."[8]

"For hostile work environment sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'"[9] This analysis consists of an objective and subjective component.[10] The first is to determine whether the sexual conduct complained of is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create a hostile or offensive work environment."[11] The second is to decide whether the victim "subjectively perceive[s] the environment to be abusive . . . ."[12] Because plaintiffs must demonstrate both of these prongs, Defendants' motion for summary judgment will be successful if they can show that "there is no genuine issue as to any material fact" on either prong.[13] Lastly, so long as a supervisor's harassment did not culminate into a tangible employment action against the Plaintiffs, Defendants' motion for summary judgment may also be granted if Defendants successfully prove the hostile work environment affirmative defense by showing that (1) Frank's took reasonable care to prevent and correct promptly any sexually harassing behavior, and that (2) Plaintiffs unreasonably failed to avail themselves of these preventative and corrective opportunities, or otherwise avoid harm.[14]

---

[8] *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal citations omitted).
[9] *Stahl v. Sun Mircrosys.*, 19 F.3d 533, 537-38 (10th Cir. 1994).
[10] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (stating that "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.")
[11] *Stahl*, 19 F.3d at 538 (internal citations omitted).
[12] *Harris*, 510 U.S. at 21-22 (stating that "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.)
[13] Fed R. Civ. P. 56(c)(2).
[14] *Pinkerton v. Colo. D.O.T.*, 563 F.3d 1052, 1059 (10th Cir. 2009).

### A. The Objective Prong: Severity and Pervasiveness

Title VII is not meant to be a "general civility code."[15] As such, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[16] Stated differently, the "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" do not amount to a hostile work environment.[17] Rather, courts are directed to look for extreme conduct, and consider all circumstances including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."[18] It is also important to note that "[a] finding of pervasiveness or severity need not rest solely on actions aimed directly at a plaintiff, . . . but may also consider harassment of others in the workplace."[19] This is so "because one of the critical inquiries in a hostile environment claim must be the *environment*."[20] Thus, "incidents of sexual harassment directed at employees other than the plaintiff can be used as proof of the plaintiff's claim . . . ."[21]

At the outset, "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact."[22] In the instant case, the Plaintiffs have submitted evidence of numerous instances of extreme behavior, ranging from crude jokes and innuendos, to sexually-motivated inquiries, comments, gestures, discussions,

---

[15] *Faragher*, 524 U.S. at 788.
[16] *Id.* (internal citations omitted).
[17] *Id.*
[18] *Id.* at 787-88 (quoting *Harris*, 510 U.S. at 23).
[19] *Nieto v. Kapoor*, 268 F.3d 1208, 1218 n.7 (10th Cir. 2001).
[20] *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987) (emphasis in the original).
[21] *Stahl*, 19 F.3d at 538.
[22] *Herrera v. Lufkin Indus.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *McCowan v. All-Star Maint., Inc.*, 273 F.3d 917, 923 (10th Cir. 2001)).

touchings, and other activities.[23] The examples are numerous, and it is clear that sexual content permeated Frank's work place. The court is therefore compelled to believe that a reasonable jury could conclude that the frequency, severity, and nature of what occurred as stated in the record establishes Frank's as a hostile work environment. Therefore, Defendants' motion cannot prevail on this prong.

### B. The Subjective Prong: The Victim's Perception of an Abusive Environment

To succeed on their motion, Defendants may also show that the Plaintiffs did not perceive their individual work environments as sufficiently hostile.[24] Defendants also fail on this prong. Each Plaintiff has testified that she was aware of the sexually-laden activity that had and was occurring at Franks, and that it made her feel varying levels of distress.[25] Moreover, Defendants have not presented any undisputed evidence that would compel a finding that Plaintiffs' concerns were feigned or unreasonable. Whether Plaintiffs perceived Frank's to be an abusive environment is an issue of material fact and a conclusion that a reasonable jury could make.

### C. Defendants' Hostile Work Environment Affirmative Defense

Frank's contends that it has shown the affirmative defense to a hostile work environment beyond dispute. This contention fails. The Tenth Circuit has found that an employer may be vicariously liable to a victimized employee for an actionable hostile work environment created by a supervisor in two situations:

> "First, the employer is vicariously liable when the supervisor's harassment culminates in a tangible employment act, such as discharge, demotion, or undesirable reassignment. In that situation, the employer has no affirmative defense available. Second, an employer may be vicariously liable for a hostile work environment, even absent a tangible employment action. However, in that circumstance, the employer will not be liable if it proves the following affirmative defense by a preponderance of the evidence: (1) it 'exercised reasonable care to prevent and correct promptly any sexually harassing

---

[23] *See supra* Factual Background, at 2-4.
[24] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).
[25] *See supra* Factual Background, at 2-4.

7

behavior,' and (2) the plaintiff 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'"[26]

At the time of the alleged conduct, Mr. McFarland was the President of Frank's and clearly a "supervisor" for purposes of Title VII.[27] The court now considers in turn whether a tangible employment action was taken against each individual Plaintiff, and if not, whether the affirmative defense applies. In every case, the factual disputes preclude the court from finding as a matter of law that the affirmative defense bars the plaintiffs' claims.

### i. A Factual Dispute Exists Over Whether an *Actual* Tangible Employment Action Was Taken Against Ms. James.

Ms. James asserts that because of her response to the sexual harassment, Frank's changed the work she did and lowered her rate of pay. These actions by Frank's, supported by the evidence, are sufficient to prove a change in her employment status.[28] Defendants argue that other reasons existed for those changes and that the changes were instituted for her benefit and safety.[29] There is, however, evidence from which a jury could reject Frank's assertions and accept Ms. James claims. As such, there is an issue of material fact that precludes Frank's from prevailing on the affirmative defense on a motion for summary judgment.

### ii. A Factual Dispute Exists Over Whether a *Constructive* Tangible Employment Action Was Taken Against Ms. Hoffman and Ms. Prisbrey.

Ms. Hoffman and Ms. Prisbrey assert that they were constructively discharged. If a reasonable jury could find this to be the case, then the affirmative defense is not available to Frank's because the Supreme Court has found that a constructive discharge is a tangible

---

[26] *Pinkerton v. Colo. Dept. of Transp.*, 563 F.3d 1052, 1058-59 (10th Cir. 2009) (citations omitted).
[27] *See Swinton v. Potomac Corp.*, 270 F.3d 794, 804 (9th Cir. 2001) (finding that "an employee is a member of management if a supervisor possessing substantial authority and discretion to make decisions concerning the terms of the harasser's or harassee's employment, such as authority to counsel, investigate, suspend, or fire the accused harasser, or to change the conditions of the harassee's employment.")
[28] (Def.'s Mem. In Supp. of Mot. For Summ. J. on Claims of Pl. James, xiv.)
[29] *Id.* at xiv-xvi.

employment act.[30]  "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes.  The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"[31]  The Tenth Circuit has provided further guidance, explaining that "[w]orking conditions must be so severe that the plaintiff simply had no choice but to quit.  In contrast, a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged."[32]

Defendants argue that Ms. Hoffman and Ms. Prisbrey were not constructively terminated, but the record demonstrates that a dispute of material facts exists on this question.[33]  For example, Ms. Hoffman testified that just prior to terminating her employment she had told John Smith, "I've had enough.  I have tried to go to people.  I've tried to find help.  And nobody is helping and I've had enough."[34]  Likewise, Ms. Prisbrey testified that "[b]ecause of the treatment, I quit my job."[35]  Ms. Prisbrey further testified that she decided to terminate her employment at Frank's because she didn't think it was a very good place for her to be working and that although she really liked the job, it wasn't a very good environment.  She further said that she had tried to talk to her supervisor about things she thought should be changed, and while she did not specifically mention Gene McFarland, she did mention that there was "a lot of crude, rudeness around there

---

[30] *Pa. State Police v. Suders*, 542 U.S. 129, 140-41 (U.S. 2004) ("[A]n employer does not have recourse to the Ellerth/Faragher affirmative defense when a supervisor's official act precipitates the constructive discharge; absent such a 'tangible employment action,' however, the defense is available to the employer whose supervisors are charged with harassment.")
[31] *Id*. at 141.
[32] *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004) (citations omitted).
[33] Defendants also erroneously argue that the *Faragher* defense is available to them even if Defendants *were* constructively discharged.  Defendants point to *Suders*, which does note that "[u]nlike an actual termination, which is always effected through an official act of the company, a constructive discharge need not be."  *Suders*, 542 U.S. at 148.  However, the point is misapplied.  *Suders* simply suggests that constructive discharge is not necessarily an official act of the company, but does nothing to preclude the possibility.  Where a supervisor has allegedly harassed *and* constructively discharged an employee as Plaintiffs claim, the case is one of an official company act and fits squarely within *Pinkerton's* first category.
[34] (Hoffman Dep., 18.)

9

and that I didn't think that it should be socially acceptable there."[36] The defendants argue that Ms. Prisbrey voluntarily left her job at Frank's, an assertion they support by citing her testimony that she had already accepted employment elsewhere. Nevertheless, the evidence is sufficient for a jury to find that Mr. McFarland's conduct was a material factor in her decision to leave. Thus, both Ms. Hoffman's and Ms. Prisbrey's claims are supported by sufficient evidence for a jury to find that the various forms of harassment they endured effectively led to their terminations. Defendants have not presented evidence that disproves this evidence of constructive discharge as a matter of law, and a resolution of the matter should be left to the trier of fact.[37]

### iii. A Factual Dispute Exists as to Whether Frank's Can Succeed in Proving Its Affirmative Defense Against Plaintiff Moore.

Unlike the other Plaintiffs, Ms. Moore has presented no evidence that the alleged harassment by Mr. McFarland resulted in any form of tangible employment action against her. Ms. Moore contends that Mr. McFarland's granddaughter caused her and her son problems with payroll.[38] However, nothing provided in the record can reasonably support a conclusion that these actions were a culmination of Mr. McFarland's harassment. Rather, the only available evidence tends to show that they stemmed from personal issues between Ms. Moore and payroll personnel. Because Ms. Moore has failed to present evidence from which a jury could conclude that Frank's took a tangible employment action against her, the Title VII affirmative defense is available to Defendants.[39]

---

[35] (Prisbrey Dep., 38.)
[36] (Prisbrey Dep., 75, 70-73.) This discussion took place at the time Ms. Prisbrey had given notice. During this discussion, Ms. Prisbrey describes herself as having been fired.
[37] Defendants note that her exit interview form says that Ms. Hoffman's reason for leaving was because, "She tried everything she could to find child care for her children but was not successful." However, this is simply what was written by Frank's representative. The court cannot conclude that this is dispositive in light of Ms. Hoffman's testimony. (Def.'s Mem. In Supp. of Mot. For Summ. J. on claims of Pl. Hoffman, Ex. 5.)
[38] (Moore Dep., 27-28.)
[39] As of her deposition, Ms. Moore had remained in employment with Franks. (Moore Dep. 13, ¶23-25).

Nevertheless, to succeed on this affirmative defense on a motion for summary judgment, Defendants must prove as a matter of law: (1) Frank's "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) that Plaintiffs "unreasonably failed to take advantage of any preventive or corrective opportunities provided by [Frank's] or to avoid harm otherwise."[40] To succeed on the defense, a defendant must establish both prongs. In this case, Defendants concede that a material fact is in dispute regarding the second prong, thus precluding summary judgment on this defense. Defendants acknowledge in their supporting memorandum that "Ms. Moore's own testimony regarding who she reported to and when is conflicting because Ms. Moore stated in her Intake Questionnaire that she did not report any harassment and then a year later in her deposition claimed that she did report the alleged harassment at the time it took place. Thus, it is impossible to determine when she reported the alleged harassment to Frank's."[41] Defendants' statement is an admission that a factual issue exists, and the court cannot determine, as a matter of law, that Moore "unreasonably failed to take advantage of any preventive or corrective opportunities." As such, Defendant's motion for summary judgment regarding Plaintiff Moore's first cause of action must fail.

## II. THE REMAINING CAUSES OF ACTION FAIL AS A MATTER OF LAW

### A. Second Cause of Action – Title VII – Negligent Training, Supervision and Retention

In their second cause of action, Plaintiffs allege that Frank's was "negligent in its failure to properly supervise and train Defendant McFarland, and ultimately in its retention of him in that [Frank's] failed to take prompt, adequate and effective remedial action once its management level employees knew or should have known of his actions."[42] Defendants argue that this claim is

---

[40] *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).
[41] (Def.'s Mem. in Supp. of Mot. For Summ. J. on Claims of Pl. Moore, 7.)
[42] (Compl., ¶24.)

barred as a matter of law by the exclusive remedy provided by the Utah Workers' Compensation Act.[43] Plaintiffs respond, however, that if a claim of negligent supervision is available under Title VII against Frank's as they allege, the claim is protected under the supremacy clause and cannot be preempted by a state statute.[44]

The court need not address the preemption issue because Plaintiffs fail to allege that Frank's was negligent in training, supervising, and retaining someone that makes the negligence claim actionable. As the Ninth Circuit has explained:

> "A plaintiff may state a case for harassment against the employer under one of two theories: vicarious liability or negligence. Which route leads to employer liability depends on the identity of the actual harasser, specifically whether he is a supervisor of the employee, or merely a co-worker. If the harasser is a supervisor, the employer may be held vicariously liable. If, however, the harasser is merely a co-worker, the plaintiff must prove that the employer was negligent . . . ."[45]

In this case, it is undisputed that Mr. McFarland was a supervisor. Plaintiffs do not allege, nor would the evidence support, that he was merely a co-worker. Plaintiffs have therefore elected to proceed against Frank's on a theory of vicarious liability. Having elected that theory of liability, plaintiffs are precluded from pursuing an alternate theory based on negligence.[46] Because there is no factual dispute that Mr. McFarland is not considered a mere co-worker but a supervisor, the claim against Frank's for negligence fails.[47] The court therefore grants summary judgment in favor of Defendants on the second cause of action.

---

[43] (Def.'s Mem. in Supp. of Mot. For Summ. J. on Claims of Pl. Moore, 10; James, 10; Hoffman, 10; Prisbrey, 11.)
[44] (U.S. Const. art. VI, c.2)
[45] *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (2001).
[46] McFarland is the only individual claimed in this cause of action to have been negligently supervised.
[47] *See Swinton v. Potomac Corp.*, 270 F.3d 794, 804 (9th Cir. 2001) (finding that "an employee is a member of management if a 'supervisor possessing substantial authority and discretion to make decisions concerning the terms of the harasser's or harassee's employment, such as authority to counsel, investigate, suspend, or fire the accused harasser, or to change the conditions of the harassee's employment.")

## B. Third Cause of Action – Intentional Infliction of Emotional Distress

Plaintiffs' third cause of action against both Frank's and Mr. McFarland is for the intentional infliction of emotional distress.

### i. Plaintiffs' Claim Against Frank's for Intentional Injury.

Frank's argues that this claim should be dismissed because Plaintiffs' exclusive remedy for damages arising from any emotional distress is under the Utah workers' Compensation Act, unless Plaintiffs proffer evidence from which a jury could find that Frank's intended or directed Mr. McFarlands harassing actions.[48] Frank's is generally correct. The Utah Supreme Court held in *Mounteer* that the Workers' Compensation Act provides the exclusive remedy for intentional infliction of emotional distress claims stemming from the actions of an employee. Recovery for the intentional infliction of emotional distress is possible, however, despite the Workers' Compensation Act if a plaintiff can prove that the employer "intended or directed the injurious act."[49] If it is clear from the nature of the conduct alleged that the supervisor's act was indisputably intentional, then further analysis is not necessary to determine that the claim is barred.[50]

In this case, Plaintiffs fail to provide evidence sufficient for a jury to find that Frank's intended or directed Mr. McFarland to inflict emotional distress on plaintiffs. Neither the complaint nor any factual submission identifies Frank's as the acting party. The complaint only

---

[48] (Def.'s Mem. In Supp. of Mot. For Summ. J. on Claims of Pl. Moore, 13.)
[49] *Helf v. Chevron U.S.A., Inc.,* 2009 UT 11, ¶ 22, 203 P.3d 962 (Utah 2009) ("[T]he exclusive remedy provision barred 'any common law action against the employer unless he or she intended or directed the injurious act of the co-worker'"); *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1058 (Utah 1991) (stating "[u]nless plaintiff can prove that [the employer] intended or directed [the harasser's actions], his damages arising from any emotional distress can be compensated only under the workers' compensation scheme.")
[50] *Helf*, 2009 UT 11, ¶30-31 (stating that if the supervisor's act is "indisputably intentional, rather than negligent," then it is "not necessary to apply the 'intent to injure' test to determine whether the injury was the product of negligence or intent.") *See also, e.g., Bryan v. Utah Int'l*, 533 P.2d 892 (Utah 1975); *Mounteer*, 823 P.2d at 1055.

13

refers to Mr. McFarland "and others."[51] In fact, Plaintiffs argue in their memorandum in opposition that this claim is valid because "McFarland <u>intentionally</u> inflicted emotional distress on them."[52] Nothing, however, is said of Frank's. Moreover, it is indisputable that Mr. McFarland's conduct was intentional. This is not a case in which it could be argued that Mr. McFarland was making statements that could be reasonably believed to further or advance the business interests of Frank's. As such, Plaintiffs' remedies against Frank's for the intentional infliction of emotional distress are limited to those provided for by the Workers' Compensation Act. Frank's motion for summary judgment on this claim is granted.

### ii. Plaintiffs' Claim Against Mr. McFarland for Intentional Infliction of Emotional Distress.

Under Utah law, for a claim for intentional infliction of emotional distress to be successful, a plaintiff must show that (i) the defendant's conduct was outrageous and intolerable in that it offended the generally accepted standards of decency and morality; (ii) the defendant intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (iii) the plaintiff suffered severe emotional distress; and (iv) the defendant's conduct proximately caused the plaintiff's emotional distress.[53]

First, in *Retherford v. AT&T Commc'n* the Supreme Court of Utah has found that "the conduct generally labeled sexual harassment is outrageous and intolerable and, when performed with the requisite intent, satisfies the elements of the tort of intentional infliction of emotional distress."[54] Indeed, the sexual conduct at issue in that case is not substantially different in character than the conduct alleged in this case. For Mr. McFarland to argue that the conduct was

---

[51] (Compl., ¶¶ 8, 10, 18, 22, 26, 27, 28, 29.) Plaintiffs do allege (¶30) that Westate's corporate officers "intentionally and deliberately failed to take action in response to requests from the Utah employees to control Defendant McFarland's improper and offensive actions;" however, it does not follow that Frank's therefore "intended or directed" McFarland's acts to intentionally inflict emotional distress.
[52] (Consol. Mem. Opposing Mot. For Summ. J., 70.)
[53] *Retherford v. AT&T Commc'n*, 844 P.2d 949, 970-71 (Utah 1992).

14

not outrageous and intolerable is only to beg the question of the underlying harassment, which the court believes a reasonable jury could find.

Mr. McFarland also fails on the second element because a jury could find that Mr. McFarland acted intentionally or with reckless disregard of the likelihood of causing, emotional distress. The evidence is sufficient to find that Mr. McFarland persisted in his behavior knowing that it was not welcomed by the plaintiffs. For example, Ms. Prisbrey testified that when Mr. McFarland walked in on her in the bathroom, he first went to close the door, but then opened the door to watch her from the doorway, forcing her to stand up and pull up her pants. Furthermore, he disregarded her screams.[55] Ms. Moore testified that she complained when Mr. McFarland told her she did her best work on her back and told her stories of his sexual exploits, but he nevertheless continued.[56] Ms. James testified that she expressively told Mr. McFarland no when he wanted her to sit on his lap. His response was to laugh at her.[57] Finally, when Ms. Hoffman complained to various individuals at Frank's about McFarland's repeated sexual innuendoes, they said they would take care of it. Nevertheless, Mr. McFarland's conduct continued.[58] Moreover, McFarland's conduct continued even after Frank's management supposedly visited with Mr. McFarland about his conduct. McFarland's own testimony is that his repeated sexual references didn't mean anything, thereby evidencing his complete lack of sensitivity both to the outrageous nature of his conduct and to the emotional distress it was causing.[59] Such evidence is sufficient for a jury to find that McFarland continued with the offensive sexual misconduct knowing, or at least was acting recklessly, and that it was causing distress and emotional pain to Plaintiffs.

---

[54] *Id.* at 978.
[55] (Prisbrey Dep., 41-42.)
[56] (Moore Dep., 17-19.)
[57] (James Dep., 26-29.)
[58] (Hoffman Dep., 61-62.)
[59] (McFarland Dep., 86-92.)

On the third element, the distress must be so severe that no reasonable person could be expected to endure it.[60] "It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises . . . ."[61] The Supreme Court of Utah has also directed that although the "standard for determining the outrageousness of the alleged conduct is objective," the standard "for determining whether a plaintiff has experienced emotional distress is subjective."[62] The subjective analysis is individualized for each plaintiff, and does not consider whether an ordinarily sensitive person would have experienced such suffering.[63]

Ms. James testified at her deposition that she suffered weight gain, trouble sleeping, edginess, crying, mood swings, and depression, all attributable to McFarland's treatment.[64] Ms. Prisbrey testified that she became unable to sleep and put on ten pounds due to the incidents and accompanying stress at Frank's.[65] She testified that she had consulted with doctors and was prescribed various medications and that she felt depression and anxiety, although not clinically diagnosed.[66] Ms. Moore testified that the emotional distress resulted in her taking up smoking again, and caused trouble sleeping, headaches, and depression.[67] Ms. Hoffman testified that she suffered emotional distress while working at Frank's, evidenced by her crying, loss of control, weight gain, loss of sleep, being abrupt with people, paranoia, headaches, and issues with her self-esteem.[68] This evidence is sufficient to create an issue of fact on this element.

---

[60] *Schuurman v. Shingleton*, 2001 UT 52 ¶23, 26 P.3d 227.
[61] *In re Estate of Grimm*, 784 P.2d 1238, 1246 (quoting Restatement (Second) of Torts § 46 cmt. j).
[62] *Retherford*, 844 P.2d at 976 n.17.
[63] *Id*. at 976.
[64] (James Dep., 121-124.)
[65] (Prisbrey Dep., 99-101.)
[66] (Prisbrey Dep., 101.)
[67] (Moore Dep., 50-57.)
[68] (Hoffman Dep., 82-98).

The fourth element requires that the defendant's conduct proximately caused the plaintiff's emotional distress. All of the plaintiffs testified that the distress they experienced was a direct result of Mr. McFarland's actions toward them.[69] This evidence is sufficient for a jury to find in favor of the plaintiffs on this element.

Therefore, because a reasonable jury could find that each of the elements necessary for a claim of intentional infliction of emotional distress has been met in each of Plaintiffs' cases, the motion for summary judgment on this claim in favor of Mr. McFarland is denied.

### C. Fourth Cause of Action – Retaliation

As a basis for their fourth cause of action, Plaintiffs James and Moore assert that "[a]fter they complained of the actions of McFarland and others Plaintiff's [*sic*] James and Moore were the subject [*sic*] of retaliation by the Defendants."[70] The complaint alleges that retaliatory actions were taken due to Plaintiffs James and Moore having exercised their rights under Title VII to complain of the hostile environment and the actions of McFarland.[71] Defendants argue that the court lacks subject matter jurisdiction because the plaintiffs have not exhausted their administrative remedies and that, in the alternative, Plaintiffs do not meet the necessary elements to overcome the motion for summary judgment.[72] In opposition, Plaintiffs fail to address either argument or even to discuss this cause of action.

The Tenth Circuit has found that "[a] plaintiff must generally exhaust his or her administrative remedies prior to pursuing a Title VII claim in federal court. Thus, a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed

---

[69] Ms. James testified that her experience at Frank's was the sole cause of her symptoms (James Dep., 121-124). Ms. Prisbrey testified that her experience at Frank's was the sole cause of her inability to sleep at night and the fact that she gained weight. (Prisbrey Dep., 100.) Ms. Moore has testified that Mr. McFarland's treatment is the sole reason she started smoking again, had headaches, and had sleeping difficulties. (Moore Dep., 51, 54-55.) Hoffman testified that her symptoms are due to Mr. McFarland's harassment. (Hoffman, Dep., 82-98).
[70] (Compl., ¶ 33.)
[71] (Compl., ¶¶ 36, 39).

17

E.E.O.C. charge for which the plaintiff has received a right-to-sue letter."[73] The Charges of Discrimination submitted by Ms. James and Ms. Moore to the Utah Anti-Discrimination & Labor Division and E.E.O.C. both allege discrimination based on sex, but fail to allege retaliation.[74] The Notice of Right to Sue does not, therefore, evidence that these Plaintiffs have exhausted their administrative remedies on this claim, and as such, summary judgment is granted in favor of Defendants on the Fourth Cause of Action – Retaliation.

### CONCLUSION

For the reasons stated, the court rules as follows:

1. Plaintiffs' Motions to Strike DENIED as moot.

2. Defendants' motion for summary judgment on Plaintiffs' *First Cause of Action – Title VII Hostile Environment* is DENIED;

3. Defendants' motion for summary judgment on Plaintiffs' *Third Cause of Action – Intentional Infliction of Emotional Distress* against Mr. McFarland is DENIED;

4. Defendants' motion for summary judgment on Plaintiffs' *Second Cause of Action – Title VII – Negligent Training, Supervision and Retention* is GRANTED;

5. Defendants' motion for summary judgment on Plaintiffs' *Third Cause of Action – Intentional Infliction of Emotional Distress* against Frank's is GRANTED;

6. Defendant's motion for summary judgment on Plaintiffs' *Fourth Cause of Action – Retaliation* is GRANTED.

---

[72] (Def.'s Mem. In Supp. of Mot. For Summ. J. on Claims of Pl. Moore, 16.)
[73] *Simms v. Okla. ex rel. Dep'r of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999).
[74] *See* Moore's Charge of Discrimination, Doc. 31-8; James's Charge of Discrimination Doc. 50-1, ex. 1.

DATED this 8th day of October, 2010.

BY THE COURT:

*Clark Waddoups* (signature)

Clark Waddoups

United States District Court Judge